1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRA MARTINEZ, On Behalf of Herself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>ENERGIZER HOLDINGS INC., a Missouri Corporation; PLAYTEX PRODUCTS, LLC, fka PLAYTEX PRODUCTS, INC., a Delaware Corporation; TANNING RESEARCH LABORATORIES LLC, a Florida Limited Liability Company,<br><br>          Defendants. | CASE NO. 1:12-CV-01802-AWI-SKO<br><br>**STIPULATION AND ORDER RE JOINT DOCUMENT COLLECTION AND PRODUCTION PROTOCOL**<br><br>Courtroom 7, (6th Floor)<br>Magistrate Judge: Hon. Sheila K. Oberto |

JOINT DOCUMENT COLLECTION AND PRODUCTION PROTOCOL;
STIPULATION AND ORDER THEREON

## DOCUMENT COLLECTION AND PRODUCTION PROTOCOL

Plaintiff Alejandra Martinez ("Plaintiff") and Defendants Energizer Holdings Inc., Playtex Products, LLC f/k/a Playtex Products, Inc., and Tanning Research Laboratories, LLC, ("Defendants" and collectively with Plaintiff, the "Parties"), through their respective counsel, have engaged in discussions between them, and have consulted with those additional persons who are knowledgeable concerning issues associated with electronically stored information, as necessary, regarding the collection and production of documents responsive to the Parties' discovery requests. Defendants, through their counsel, have discussed with Plaintiff's counsel information regarding Defendants' network systems, access rights controlled by electronically controlled policies, and document management procedures. The Parties seek to reduce the time, expense, and other burdens related to the collection and production of Discoverable Information (as defined herein) and to better define the scope of the Parties' obligations with respect to collecting and producing such information. The Parties further wish to minimize or avoid disputes between them regarding the Parties' discovery requests. The Parties' counsel are also mindful of their ethical obligation to maintain the confidences of their clients, and, therefore, seek to establish a framework that protects such information. The Parties, therefore, agree that it is in their respective best interests to establish an agreed framework, methodology, and format by which the Parties will collect and produce their Discoverable Information.

Accordingly, the Parties stipulate and agree to the following framework, terms, methodology, and format for the collection and production of Discoverable Information, and further stipulate to the entry of an Order reflecting the terms hereof.

### DEFINITIONS AND SCOPE

1.  Issues that may arise concerning the production of discoverable information shall be resolved first with reference to this stipulation and then with reference to the Federal Rules of Civil Procedure and case law construing same.

2. Unless otherwise specifically modified herein capitalized terms shall have the meanings as set forth herein and throughout this stipulation.

A. **"Active Data."** Information residing on the direct access storage media that is readily visible to the operating system and/or application software with which it was created, and that is accessible to end-users without the need for restoration or reconstruction. By way of example only, Active Data shall not include deleted, erased, overwritten, fragmented, or corrupted files; server, system or network logs; data stored in random access memory ("RAM") or cache memory; temporary or cache files; internet "cookie files;" data stored in printers, copy machines, or fax machines; or data for which legacy software or hardware is required to access or view the data.

B. **"Backup Data."** A copy of ESI that serves as a source for recovery in the event of a system problem or disaster, and that is routinely recycled or overwritten on a set schedule for this purpose and is separately stored from Active Data.

C. **"Discoverable Information."** Electronically Stored Information and Documents that are the subject of the Parties' respective propounded discovery requests that are within the scope of Fed. R. Civ. P. 26 and 34, and that are not otherwise objectionable, or subject to a claim of privilege, or other protection afforded to the information. It is the Parties' intent that their resulting collections and productions will represent a reasonable effort on their part to identify and produce Discoverable Information.

D. **"Database."** Any active structured collection of electronically stored information that uses a program, system, or application to store, access, search, process and/or retrieve information to serve a specific operational task or purpose and for which the ability to routinely alter, modify, or otherwise change the information, program, system and/or application is integral to its purpose.

E. **"Document."** Documents as defined in Fed. R. Civ. P. 34 (a) (1) (A).

3

F.    **"ESI."** Electronically Stored Information as used in the Federal Rules of Civil Procedure.

G.    **"Hash."** The mathematical algorithm that represents a unique value for a given set of data, similar to a digital fingerprint, including but not limited to MD5 and SHA1 values.

H.    **"Native Format."** ESI that has an associated file structure defined by the original creating application, (such as .ppt or .pptx for PowerPoint documents or, .xls or .xlsx for Excel spreadsheets).

I.    **"OCR (Optical Character Recognition)."** The technological process that translates and converts printed matter on a document into a format that a computer can recognize as letters or numerals for purposes of reading and/or searching the text of the document.

J.    **"Parent/Child."** The relationship between a collection of pages or files constituting a logical single communication of information, but consisting of more than a single stand alone document. Examples include an e-mail with an attached Word document – the e-mail being the "Parent" and the Word document being the "Child."

## COLLECTION PROTOCOL

**1.    Collection Methodology.** The Parties may use any method or methods or a combination thereof to collect Discoverable Information, provided that the Party believes such method is designed in a manner to result in a reasonable inquiry and efforts to locate Discoverable Information. Such methods include, but are not limited to, the following:

A.    Identification and/or interviews by the producing Party's counsel of custodians who are likely to possess Discoverable Information which is in the possession, custody, or control of the Party, and an actual review by the producing Parties' counsel of the physical and electronic areas to which the custodian has access

4

and uses to save his/her information; or

  B. The application of search queries designed by the producing Parties' counsel to the electronic file locations identified as ones in which the custodians have access to and store their ESI.

  C. Nothing herein shall require the application of search queries to search locations other than those locations that the custodians have identified or to which they have access. Correspondingly search queries may be used but are not required to be used in conducting the interviews of the custodians in the identifying their information that is likely to contain Discoverable Information.

  D. To the extent search queries are used, the queries will be conducted in a manner so as to ensure that hyphenation of terms will not affect the search results (e.g., a query for "all inclusive index" will return documents containing either "all inclusive index" or "all-inclusive index."

  E. To the extent search queries are used to identify documents (including e-mail) containing attachments, they shall be run against both the parent document and any child attachment. Documents and any related attachments returned as a result of the search queries will be used to identify responsive Discoverable Information. Both the parent document and any child-related attachment shall be collected, irrespective of whether the search term hit appears in the parent document, the child attachment, or both.

  F. All queries, to the extent used, will be run in a non-case sensitive manner.

  2. **Password Protected Information.** The Parties shall make reasonable efforts to identify any potentially relevant ESI that is password protected or encrypted and undertake to evaluate or remove those passwords or encryptions for purposes of determining the document's responsiveness to the discovery. In the event the Parties' efforts to remove such passwords are unsuccessful, the producing Party shall provide an

5

"Exceptions Log" to the other Parties that identify those files (by filename and date). The Parties shall not be required to provide information on passwords obtained or the manner with which the password protected or encrypted files were made accessible.

3. **Reasonableness.** The Parties' obligation to conduct a reasonable inquiry for documents in response to propounded discovery shall be deemed to be satisfied by their review and production of documents that are collected by utilizing the foregoing protocols.  The Parties shall have no obligation to search for or produce any further documents that are not collected pursuant to the foregoing protocols, except as otherwise agreed to in writing by the Parties.  The Parties shall be required to search for Active Data and/or only ESI residing on active systems and shall not be required to restore or otherwise search Backups or any other inaccessible data, provided however that to the extent a custodian's e-mail is saved, in whole or in part, in a .pst or similar archived format on an active system, such archived e-mail shall be deemed to be Active Data.  Data which is not reasonably accessible shall be governed by Federal Rule of Civil Procedure 26(b)(2)(B) and case law construing same.

4. **Responsiveness.**  With respect to ESI, the fact that a document is returned by application of the search queries and the protocols used herein from a custodian does not mean that such document is responsive to any propounded discovery request or is otherwise relevant to this litigation.

## PRIVILEGE

1. **Scope of Log.**  The Parties will not be required to create a privilege log for any privileged information that came into existence on or after October 24, 2012. Nor shall the Parties be required to prepare a privilege log for any and all documents or information that may be protected by a Joint Prosecution or Joint Defense Privilege, if any.

2. **Clawback of Privileged Documents.**  Notwithstanding any other

6

1  provision of this Order, the production of documents by any Party will not operate as a
2  waiver of any common law or statutory privilege, protection, or immunity applicable to
3  those documents, including, but not limited to any attorney-client privilege, work
4  product protection, joint or common interest doctrine, information that is subject to
5  protection as trial preparation material, or that is protected from discovery by any other
6  applicable privilege, protection, immunity, law, or rules (collectively "Privileges").  If a
7  Party discloses, produces, or makes available for inspection and copying information
8  subject to any Privilege ("Disclosed Privileged Information") such disclosure shall not
9  constitute or be deemed a waiver or forfeiture of any claim of such Privilege applicable
10 to such Disclosed Privileged Information or any related subject matter, in this litigation
11 or in any other court, administrative action, investigation, or legal proceeding.

12        3.    **Procedures for Disclosed Privileged Information.**  Any Party who
13 realizes that it, he, or she has produced or received Disclosed Privileged Information, as
14 soon as practicable, shall (i) notify, in writing, all other Parties and/or other persons
15 producing or receiving such information that disclosure was made, (ii) identify the
16 document(s) disclosed, (iii) make reasonable efforts to retrieve all copies of and prevent
17 further disclosure of the Disclosed Privileged Information, and (iv) refrain from using or
18 further disclosing the Disclosed Privileged Information (including, but not limited to,
19 using the information in depositions or at trial).  Any person or entity receiving notice
20 that Disclosed Privileged Information has been produced shall, within five (5) business
21 days, return, destroy, sequester or delete all copies of the Disclosed Privileged
22 Information, as well as any abstracts, charts, memoranda, notes, summaries,
23 compilations, or indices of same, and provide a representation of counsel that all such
24 information has been returned, destroyed, sequestered or deleted.  To the extent the
25 claim of Privilege is disputed, the Parties shall meet and confer to resolve any such
26 dispute, and in the event such dispute cannot be resolved, the Party receiving such

27                                        7
28

information may promptly present the information to the Court, under seal, pursuant to the Local Rules of this Court, and seek such further relief from the Court regarding the claim of Privilege.  The Party claiming the Privilege shall preserve the Disclosed Privileged Information until the claim of Privilege is resolved either by agreement of the Parties or by the Court.

       4.    **Reasonableness of Privilege Procedure.**  The Parties contemplate that the documents that may be requested or produced in this case may be voluminous and may be produced in this action without a full and complete privilege review.  For the sake of efficiency and mitigation of costs related to the production of documents, the Parties stipulate to and request that the Court find that the procedures described herein constitute reasonable steps by the Parties to preserve any applicable privileges, without further showing.

       5.    **Time for Production of Privilege Log.**  The producing Party shall produce any required privilege log for a custodian's documents not less than ten days prior to that custodian's deposition.

       6.    **Privileged E-mail Strings.**  Where some or all of the e-mail string is privileged, the Parties need only include one entry on the privilege log for the entire e-mail string and need not log each e-mail contained in the chain separately.

## PRODUCTION FORMAT

       1.    **General Format of Production.**  The Parties shall produce any information required to be produced in this case, whether originally stored in paper or electronic form, in the manner described herein.  Notwithstanding the foregoing, to the extent a Party requests of the other an alternative format or method of production contrary to the terms of this protocol, any such request shall not increase the costs to the producing Party for the alternative production of such information and the receiving Party shall agree to pay for any such alternative production.

2. **Production Formats.** Discoverable Information produced by the Parties shall be in the following format:

A. **Paper Documents.** Information that is maintained in paper format shall be produced as scanned black and white images at 300 d.p.i., in a Group 4 compression single-page Tagged Image File Format ("TIFFs" or ".TIFF format"), which shall reflect the full and complete information contained in the original document.

    i. The TIFF images shall be accompanied with a cross-referenced unitization load file, in standard format (e.g. Concordance (".dat"), which contains the Bates number of each page, the appropriate unitization of the document, and the family attachment ranges, as well as a text file containing the associated OCR; provided, however, that no producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image, and the producing Party shall provide the OCR in its "as is" condition. Once the producing Party provides the OCR in its "as is" condition, its obligation under this stipulation with respect to OCR shall be deemed complete. Paper documents shall be unitized in a manner so as to maintain the document(s) and any attachments, as they are maintained in the usual course of business.

    ii. Paper documents that contain the equivalent of Post It Notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the document is obscured by the affixed note, the document and note shall be scanned separately, and treated as a parent/child relationship.

B. **Electronically Stored Information.** Subject to the provisions of paragraphs "C" and "D" below, document images shall be generated from electronically stored information in Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document, together with an

accompanying Concordance (".dat") and Opticon (".opt") load file, containing extracted searchable full text and the following fields of information, as applicable or their functional equivalent:

> BEGBATES | ENDBATES | PGCOUNT | SUBJECT | FILENAME| FROM | TO| CC | BCC | SENTDATE | RECEIVEDDATE | MODDATE | MD5HASH | BEGATTACH | ENDATTACH | CUSTODIAN | CONFIDENTIALITY DESIGNATION | REDACTION PRESENT

C.  **Spreadsheets and Presentations (e.g. PowerPoint).**  Spreadsheets and presentations such as PowerPoint or similar presentations shall be produced in their native format with extracted searchable full text and the applicable fields of information identified in the previous paragraph together with a placeholder image in TIFF format, which shall be the native documents' index page.  The index page shall contain, a single Bates number to be used for the native document and shall also display any confidentiality designation for the native file.

D.  **Audio/Video and other Multi-Media Formats.**  These files shall be produced in their native format, together with a placeholder image in TIFF format, which shall be the native file index page.  The index page shall contain a single Bates number to be used for the native document and also display any confidentiality designation for the native file.

E.  **Databases, Intranets, Web Content and Social Media.**  To the extent a response to a Party's discovery requests requires production of electronically stored information contained in a database, Website, Intranets, or Social Media site, in lieu of producing the entire database, Website, Intranet, or Social Media site, the responding Party shall provide: with respect to database(s) (i) the name of the program and database in which the responsive information is contained, additional information to explain the database scheme, codes, abbreviations, and the available report formats reflecting the available fields of information, and generated reports responding to the requests.  With

1 respect to web content, intranets, or social media sites, the responding Party shall
2 provide the name and address of the site which contains or did contain the responsive
3 information. Additionally, to the extent such site requires entry of a password and login
4 to access such site, counsel shall meet and confer, to discuss appropriate measures to
5 permit production of responsive information from such sites, as well as what database
6 reports can or should be generated to respond to the requests. No producing Party shall
7 be required to design reports not currently used in the ordinary course of its business
8 solely for this litigation.

9     F.    **Embedded Documents.**  If a document has another file embedded in it
10 (*e.g.* a Word document that has a spreadsheet embedded in it), the embedded documents
11 shall be produced as an attachment to the file in which it is embedded.

12     G.    **Deduplication.**  Electronically Stored Information may be de-duplicated
13 either by custodian or globally, at the producing Party's option using either the MD5 or
14 SHA1 values. Any de-duplication method used shall not eliminate individual documents
15 from families.

16     H.    **Time Zone:**  When processing potentially responsive documents for
17 production, all such documents shall be normalized to Coordinated Universal Time
18 ("UTC").

19     I.    **Color Documents.**  Color documents, whether paper or ESI, shall be
20 produced in black and white in the first instance. If a produced document contains color
21 and that color is necessary to decipher the meaning, context, or content of the document,
22 the producing Party shall honor reasonable results for either: (i) access to the original
23 document for inspection and copying, or (ii) production of a color image of the
24 document.

25     J.    **Production Media.**  Responsive information shall be produced on a
26 DVD, external hard drive, or upon request of the producing Party, to the requesting

27     11
28

Parties' designated FTP site, or on any other readily accessible computer or electronic media as the producing Party and requesting Party may agree. Information that shall be identified on the face of the production media shall include: (i) the case number; (ii) the producing Party's name; (iii) the production date; (iv) any confidentiality notation required by any Protective Order entered in this case; and (v) the Bates number range contained on the production media. If the producing Party encrypts or "locks" the production, the producing Party shall include with the production an explanation of how to decrypt the files.

3. **Use of Documents.** When documents produced in accordance with this agreement are used in any proceeding herein, including depositions, hearings, or trial, the TIFF image of the document shall be used, subject to all proper objections. Metadata, OCR and/or extracted text shall not be used in any proceeding as a substitute for an image of any document.

4. **Categorization of Production.** The Parties expressly waive the provisions of Fed. R. Civ. P. 34 (b) (2) (E) and the subparts thereunder.

5. **Discoverability and Admissibility.** Nothing contained herein shall be construed to affect the discoverability or admissibility of any document. All objections to the discoverability or admissibility of any document are preserved and may be asserted at any time.

6. **Identical Copies.** Nothing contained in this stipulation shall require the Parties to produce more than one form of identical copies of a document, irrespective of the original format of the document. The producing Party need only produce a single copy of that document, and shall not be required to produce all forms of the document (*i.e.*, paper and ESI).

7. **Meet and Confer.** The parties shall meet and confer regarding a dispute or issues arising out of the implementation of this stipulation. All disputes arising out of

1 this stipulation shall be resolved with reference to the agreements contained herein and
2 the Federal Rules of Civil Procedure as set forth above.

3       8. **Resolution of Production Issues.** The Parties shall meet and confer to the extent reasonably necessary to address issues within the producing Party's control regarding the import and use of the produced materials with commercially available document management or litigation support software. Documents that cannot be read because of imaging or formatting problems shall be promptly identified within an exceptions index by the requesting Party, which lists the document and reason(s) for the exception ("Exceptions Index"). The producing Party and the requesting Party shall meet and confer to attempt to resolve the issues with respect to Documents contained on the Exceptions Index, to the extent the exceptions are within the Parties' control.

Dated: November 25, 2013       Respectfully submitted,

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

By: /s/ Patricia N. Syverson
Elaine A. Ryan (Admitted Pro Hac Vice)
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (Admitted Pro Hac Vice)
2325 E. Camelback Rd., Ste. 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone: (602) 274-1100
Facsimile: (602) 274-1199


Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
mmuecke@bffb.com
Telephone: (619) 756-7748

STEWART M. WELTMAN LLC
Stewart M. Weltman (Admitted Pro Hac Vice)
53 W. Jackson Suite 364

|||
|---|---|
| | Chicago, IL 60604<br>sweltman@weltmanlawfirm.com<br>Telephone: 312-588-5033<br>(OF COUNSEL LEVIN FISHBEIN SEDRAN & BERMAN) |
| | LEVIN FISHBEIN SEDRAN & BERMAN<br>Howard J. Sedran<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Telephone: (215)592-1500<br>Facsimile: (215)592-4663 |
| | Attorneys for Plaintiff |
| Dated: November 25, 2013 | LATHAM & WATKINS LLP<br><br>By: /s/ *Daniel Scott Schecter*<br>Daniel Scott Schecter (171472)<br>Michael J. Reiss (275021)<br>355 South Grand Avenue<br>Los Angeles, CA 90071<br>daniel.schecter@lw.com<br>michael.reiss@lw.com<br>Telephone: 213-485-1234<br>Facsimile: 213-891-8763<br><br>William Rawson (Admitted Pro Hac Vice)<br>555 Eleventh Street, NW, Suite 100<br>Washington, D.C. 20004<br>william.rawson@lw.com<br>Telephone: 202-637-2200<br>Facsimile: 202-637-2201<br><br>Attorneys for Defendants |

# **ORDER**

The Court hereby approves and orders the document collection and production protocol pursuant to the parties' stipulation set forth above.

IT IS SO ORDERED.

Dated:   **December 6, 2013**                    **/s/ Sheila K. Oberto**
                                                                  UNITED STATES MAGISTRATE JUDGE